**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:25-cv-24033-LEIBOWITZ/AUGUSTIN-BIRCH**

NEWMARK & COMPANY REAL ESTATE,
INC. and NEWMARK SOUTHERN REGION,
LLC,

     *Plaintiffs*,

*v.*

NEWMARK COMMERCIAL REAL ESTATE,
LLC and JACQUELINE TAVARES,

     *Defendants.*

_____/

**ORDER**

**THIS CAUSE** is before the Court on Plaintiffs Newmark & Company Real Estate, Inc. ("Newmark & Co.") and Newmark Southern Region, LLC's (collectively, "Plaintiffs") Motion to Dismiss Defendants' Counterclaims and Strike Affirmative Defenses (the "Motion") [ECF No. 18], filed on October 21, 2025.  Defendants responded in opposition [ECF No. 29], and Plaintiffs replied [ECF No. 31].  The Court has reviewed the parties' arguments, the record, and the relevant legal authorities.  After careful review, the Motion [**ECF No. 18**] is **GRANTED IN PART AND DENIED IN PART**.

## I.    BACKGROUND

### A. The Complaint's Allegations

This is an action for trademark infringement where Plaintiff brings four claims against Defendants: (1) Federal Trademark Infringement under 15 U.S.C. § 1114 (By Newmark & Co. Against Defendants); (2) Federal Unfair Competition under 15 U.S.C. § 1125(a) (By Plaintiffs Against Defendants); (3) Common Law Trademark Infringement (By Plaintiffs Against Defendants); and (4)

Common Law Unfair Competition (By Plaintiffs Against Defendants). [*See* ECF No. 1 ¶¶ 72–123]. The allegations are as follows:

Plaintiffs are leaders in commercial real estate services and are one of the largest full-service real estate services firm in the United States. [*Id.* ¶ 1]. Since 1929, Plaintiffs have continually used the brand and trademark NEWMARK. [*Id.*]. Newmark & Co. owns federal trademark registrations with Registration Nos. 6,782,741 (the "'741 Mark") and 6,167,012 (the "'012 Mark") that comprise the NEWMARK mark. [*Id.* ¶ 2]. Plaintiffs allege that Defendants have unlawfully infringed on the NEWMARK mark, wrongfully capitalizing on their goodwill and reputation. [*Id.* ¶ 6].

For years, Newmark & Co. allegedly established rights to the NEWMARK name within Florida, arising out of its national fame and reputation, as well as specific advertising, provision of services, and opening and operating of numerous real estate brokerage and advisory offices in Florida. [*Id.* ¶ 24]. Consumers have come to recognize the NEWMARK trademarks given Plaintiffs' substantial investment of time, resources, and work in developing the NEWMARK brand. [*Id.* ¶ 25]. As early as the late 1980s, Plaintiffs' market presence in Florida has been well-known and established, garnering media publicity and acknowledgement over the years. [*Id.* ¶¶ 26, 29–32].

Because of Plaintiffs' state-wide and national growth, Plaintiffs created derivative variations of the NEWMARK mark, including Newmark Knight Frank, Newmark Grubb Knight Frank, ARA Newmark, and Newmark Cornish & Carey. [*Id.* ¶ 34]. The business has earned accolades for its real estate services and remains heavily regarded throughout Florida and the United States. [*See id.* ¶¶ 35, 38].

Plaintiffs allege that Defendants have wrongfully taken advantage of Plaintiffs' good name in the same real estate marketplace. [*See, e.g., id.* ¶¶ 65–66]. Defendant Jacqueline Tavares ("Defendant Taveres"), formerly known as Jacqueline Newmark [*see id.* ¶¶ 42–43], incorporated Defendant Newmark Commercial Real Estate, LLC ("Defendant NCRE") in 2016. [*Id.* ¶ 41]. That same year,

Defendant Tavares acquired the domain www.newmarkcommercial.com for Defendants' website, which is registered to Defendant Tavares.  [*Id.* ¶ 47].

Beginning in 2021, Defendants "embarked on a campaign to trade on Newmark's goodwill and reputation and otherwise interfere with Newmark's business and enrich itself at Newmark's expense – all in violation of Newmark & Co.'s trademark rights."  [*Id.* ¶ 50].  The purported acts of infringement that are likely to confuse consumers because of the similarity between Plaintiffs' presence in the industry include the content of Defendant Tavares's website, the name of Defendant NCRE and its logo, and the advertisement of Defendants' commercial real estate services with respect to "leasing, investment sales, and financing brokerage."  [*See id.* ¶¶ 51–55, 63–64, 66–71].

Plaintiffs seek several forms of relief, such as a permanent injunction, accounting of profits wrongfully obtained, treble damages, punitive damages, fees and costs, and interest.  [*Id.* at 25–27].

**B. The Counterclaims' Allegations**

Defendants filed an Answer to the Complaint, lodging six affirmative defenses and five counterclaims.  [*See* ECF No. 14 at 10–27].  Defendants plead these counterclaims:  (1) Federal Unfair Competition under 15 U.S.C. § 1125; (2) Common Law Trademark Infringement; (3) Common Law Unfair Competition; (4) Abandonment of Newmark Registrations[1]; and (5) Abandonment of Newmark Realty Capital Marks.[2]  [*Id.* at 21–27 ¶¶ 48–93].  The facts pled in support are as follows:

The story began in January 2016 when Defendant Tavares incorporated Newmark Commercial Real Estate in Florida "as a nod to her family real estate business and name" and started using the NEWMARK mark.  [*Id.* at 14 ¶ 13].  Since then, Defendant NCRE has been using the NEWMARK mark in connection with commercial real estate services, including representing buyers,

---

[1]     Defendants mislabel this cause of action as Counterclaim 3.

[2]     Defendants mislabel this cause of action as Counterclaim 4.

tenants, and sellers in real estate transactions. [*Id.* at 12 ¶ 1, 14 ¶ 14]. Defendants also advertised and marketed their services to the consumer public. [*Id.* at 14 ¶ 14].

Meanwhile, during this time, Plaintiffs used the Newmark Grubb Knight Frank as their operative trademark. [*See id.* at 12 ¶ 2]. It was not until October 2020 that Plaintiffs "rebranded" from Newmark Grubb Knight Frank to NEWMARK. [*Id.* ¶ 3]. Defendants allege that Plaintiffs have been aware of Defendants' use of NEWMARK for many years, but waited until 2025 to file suit. [*Id.* at 12–13 ¶ 3]. Specifically, Defendants corresponded with many representatives of Plaintiffs regarding real estate listings as early as 2016, yet Plaintiffs never communicated any issue with Defendants' use of the NEWMARK mark. [*Id.* at 15–16 ¶¶ 18–23]. Plaintiffs' first act of protest occurred in April 2023 when Defendants received a cease-and-desist letter alleging infringement of the NEWMARK mark. [*Id.* at 16 ¶ 24].

Defendants take issue with Plaintiffs' claims in this case, alleging that Plaintiffs operated under various names and marks throughout the years. [*See id.* at 16–17 ¶¶ 27–28]. The subsequent acts of rebranding purportedly cast doubt as to the validity of Plaintiffs' claim over the NEWMARK mark. [*See id.* at 17–21 ¶¶ 29–47]. Indeed, Defendants allege that any ostensible likelihood of confusion resulted from Plaintiffs' own actions changing their name and rebranding. [*Id.* at 20 ¶ 46].

Defendants request various forms of relief, including a permanent injunction, cancellation of Plaintiffs' marks, actual and punitive damages, and fees and costs. [*Id.* at 27–28].

## II.    LEGAL STANDARD

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading

standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

When reviewing a Rule 12(b)(6) motion, generally a court must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration All.*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678.

## III.   DISCUSSION

Plaintiffs present several arguments in support of dismissal. The Court addresses each in turn.

### A.  Shotgun Pleading

As an initial matter, the Court rejects Plaintiffs' argument that the counterclaims should be dismissed for violating the law against shotgun pleadings. Plaintiffs say that each counterclaim incorporates all preceding allegations that form the basis of each preceding count. [*See* ECF No. 18 at 16–17]. That, however, does not mandate dismissal in this particular case.

Complaints that violate either Rule 8(a)(2) or Rule 10(b) of the Federal Rules of Civil Procedure are often referred to as "shotgun pleadings." Rule 8(a)(2) requires a complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 10(b) provides that:

> A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a

denial—must be stated in a separate count or defense.

Fed. R. Civ. P. 10(b).  The "self-evident" purpose of these rules is "to require the pleader to present his claims distinctly and succinctly, so that[] his adversary can discern what he is claiming and frame a responsive pleading." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015) (quoting *T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1544 n.14 (11th Cir. 1985)).  The key characteristic of a shotgun pleading is its failure to give defendants "adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323.

In *Weiland*, the Eleventh Circuit identified four types of shotgun pleadings.  The first "is a complaint containing multiple counts where each count adopts the allegations of all preceding counts[.]"  *Id.* at 1321.  The second is a complaint "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1322.  The third fails to separate each cause of action into a separate count. *Id.*  The fourth asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1323.

Here, the counterclaims fit neatly within the first *Weiland* type.  Defendants' counterclaims seemingly violate this rule because there are "multiple counts where each count adopts the allegations of all preceding counts[.]"  *Id.*; [*see* ECF No. 14 at 22–26 ¶¶ 60, 71, 82, 88].  But the hallmark of a shotgun pleading is the failure to provide the opposing party with fair notice of the claims sufficient to enable the preparation of an answer in response.  *See Weiland*, 792 F.3d at 1323.  Courts in this Circuit routinely hold that this precise pleading defect does not necessitate dismissal on shotgun pleading grounds where adequate notice otherwise is given. *See White People Humor, LLC v. 904 Now LLC*, No. 24-CV-80232, 2024 WL 4427684, at *1 n.1 (S.D. Fla. June 14, 2024) (Rosenberg, J.) (declining to dismiss complaint as shotgun where "each count incorporate[d] allegations from the preceding counts" because the allegations were "sufficiently clear" to give defendants "adequate notice

of the claims against them and the grounds upon which each claim rests" (citation omitted)); *see also*

*Ricol Holdings, LLC v. Westchester Surplus Lines Ins. Co.*, 684 F. Supp. 3d 1216, 1219 (N.D. Fla. 2023)

(similar).  Indeed, Plaintiffs cannot credibly argue that the Answer is a shotgun pleading when their

own motion recognizes that Defendants' claims are "essentially the same" and rely on the same facts.

[*See* ECF No. 18 at 4].  Their precise attacks on Defendants' claims undercut any possible lack-of-

adequate-notice concern.

Accordingly, the Motion is DENIED on this score because the counterclaims comply

sufficiently with Rules 8 and 10.

### B.  Counterclaims I–III – Unfair Competition and Trademark Infringement

Plaintiffs move to dismiss the first three counterclaims pled in Defendants' Answer on the

grounds that they fail to comply with *Twombly* and *Iqbal.*  [ECF No. 18 at 4].  Specifically, and at the

core of the Motion, Plaintiffs assert that Defendants have failed to plausibly allege inherent

distinctiveness, or that they acquired secondary meaning in the NEWMARK mark prior to Plaintiffs'

use of it.  [*Id.* at 4–5].  Accepting the counterclaim allegations as true and in the most favorable light

to the Defendant, the Court DENIES the Motion in this respect.

"The legal standard for unfair competition, which includes palming off and false designation

of origin, and trademark infringement under both the Lanham Act and common law has been held to

be essentially the same." *Turner Greenberg Assocs., Inc. v. C&C Imports, Inc.*, 320 F. Supp. 2d 1317, 1330

(S.D. Fla. 2004) (quoting *Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472, 1475 n.3 (11th

Cir.1991)), *aff'd*, 128 F. App'x 755 (11th Cir. 2005).  As such, "courts have conducted the analysis of

these claims simultaneously."  *Id.* (citation omitted).  To allege a claim for unfair competition or

trademark infringement, one must satisfy two elements: (1) "valid ownership of the mark"; and (2)

"the defendant's use of the mark in commerce creates a likelihood of confusion among consumers as

to the origin of the goods." *Id.* (citing *Alliance Metals, Inc. of Atl. v. Hinely Indus., Inc.*, 222 F.3d 895, 906 (11th Cir. 2000)).

### 1. Valid Ownership of the NEWMARK Mark

Although the parties do not burn calories litigating this element, Defendants have sufficiently alleged valid ownership. For starters, Defendants have not alleged that they own any trademark registration for the NEWMARK mark. [*See generally* ECF No. 14]. That is, however, not dispositive because "[a] plaintiff is not required to possess a federal registration for its mark as a prerequisite to bringing suit." *Turner Greenberg*, 320 F. Supp. 2d at 1330 (citing *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1512–13 (11th Cir. 1984)). Indeed, "[o]wnership of a trademark can be shown by establishing actual prior use." *Id.* (citing *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001)). "Use in commerce" is defined under the Lanham Act as:

> the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. For purposes of this chapter, a mark shall be deemed to be in use in commerce--
> (1) on goods when--
> (A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and
> (B) the goods are sold or transported in commerce, and
> (2) on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State or in the United States and a foreign country and the person rendering the services is engaged in commerce in connection with the services.

15 U.S.C. § 1127.

The Eleventh Circuit has adopted a two-part test to determine whether a party has sufficiently shown "prior use" of a trademark to establish ownership: (1) "adoption" of the mark; and (2) "use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark . . . even without evidence of actual sales." *Planetary*

*Motion*, 261 F.3d at 1195 (cleaned up).  "Courts generally must inquire into the activities surrounding the prior use of the mark to determine whether such an association or notice is present."  *Id.*

Here, Defendants have adequately pled prior commercial use of the NEWMARK mark to survive a motion to dismiss.  For instance, Defendants allege that since 2016 they have been using the NEWMARK mark in connection with various real estate services in Florida.  [*See* ECF No. 14 at 14 ¶ 13].  Offering these services has been continuous for years, and both consumers and Plaintiffs themselves have been aware of Defendants' services and the use of the mark in this space.  [*Id.* ¶¶ 14–15].  These allegations suffice to satisfy the ownership prong.

2.   Acquired Distinctiveness

Now we get to the larger slice of the cake: secondary meaning and acquired distinctiveness. Plaintiffs argue at length that Defendants' trademark claims fail because they have not properly alleged that their NEWMARK mark is inherently distinctive or acquired secondary meaning in the marketplace.  [*See* ECF No. 18 at 4–9].

"An identifying mark is distinctive and capable of being protected if it *either* (1) is inherently distinctive or (2) has acquired distinctiveness through secondary meaning."  *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992) (emphasis in original).  A mark that is not inherently distinctive may nonetheless have acquired distinctiveness through secondary meaning when "the primary significance of the term in the minds of the consuming public is not the product but the producer." *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1358 (11th Cir. 2007) (alteration adopted) (quoting *Vision Ctr. v. Opticks, Inc.*, 596 F.2d 111, 118 (5th Cir. 1979)).  One can make a *prima facie* showing of "secondary meaning" by alleging "that the name has been used in connection with the proprietor's goods or service continuously and substantially exclusively for five years."  *Id.* (citing 15 U.S.C. § 1052(f)).  But whether a mark has acquired a secondary meaning, courts consider four factors:  (1) "the length and nature of the name's use"; (2) "the nature and extent of advertising and promotion of

the name"; (3) "the efforts of the proprietor to promote a conscious connection between the name and the business"; and (4) "the degree of actual recognition by the public that the name designates the proprietor's product or service." *Id.* (citing *Conagra*, 743 F.2d at 1513). The fourth factor is the "most telling." *Conagra*, 743 F.2d at 1513.

To begin, Plaintiffs are correct that Defendants have not shown that Defendants' use of the NEWMARK mark is inherently distinctive. Defendants allege that the use of the mark under the name Newmark Commercial Real Estate is "a nod to [Defendant Tavares's] family real estate business and name" because her maiden name is Newmark. [ECF No. 14 at 4 ¶ 42, 14 ¶ 13]. It is well settled that surnames are not inherently distinctive in this Circuit. *See Conagra*, 743 F.2d at 1513 ("Because Singleton is a surname, the trademark laws protect Singleton Packing's (and thus Conagra's) right to exclusive use of the name only to the extent that the name has acquired 'secondary meaning.'"). Defendants even agree on this score and admit that "NEWMARK is a surname that requires secondary meaning to establish rights." [ECF No. 29 at 4]. As such, the Court proceeds to the secondary meaning analysis.

Plaintiffs, however, are wrong that Defendants cannot show acquired distinctiveness via a secondary meaning at this juncture. They believe that Defendants' allegations are too conclusory and don't provide "specific facts" to warrant a finding that they acquired a secondary meaning in NEWMARK by October 2020—the period when Plaintiffs "rebranded" from Newmark Grubb Knight Frank to NEWMARK. [*See* ECF No. 14 at 12 ¶ 3]. Not so, here.

Let's begin with the first factor. With respect to the length and nature of Defendants' use of the NEWMARK mark, Defendants have pled enough to comply with *Iqbal* and *Twombly*. Namely, Defendants have alleged that since January 2016, they have been using the NEWMARK mark continuously in connection with commercial real estate services in Florida. [ECF No. 14 at 14 ¶¶ 13–14]. Dissatisfied, Plaintiffs beg the Court to reject this because "none [of the allegations] are tethered

to that [October 2020] date at all." [ECF No. 18 at 7]. The Court disagrees with Plaintiffs because they overlook a key allegation. In relevant part, Defendants allege that the "have been continuously doing business in Florida from January 2016 *to the present*" and "[*d*]*uring this time*," Defendants have represented a plethora of key stakeholders in real estate transactions for retail, shopping center, and medical office space while using this mark. [ECF No. 14 at 14 ¶ 14 (emphasis added)]. Further, Defendant Tavares acquired the domain www.newmarkcommercial.com (the domain for Defendants' website) in May 2016.[3] [*See* ECF No. 1 ¶ 47; ECF No. 14 at 4 ¶ 47]. This is enough to show both the length and manner of the mark's use on a motion to dismiss.[4]

Defendants have also alleged enough concerning the nature and extent of advertising of the NEWMARK mark. Defendants alleged that they have "advertised and marketed their services to the consuming public." [ECF No. 14 at 14 ¶ 14]. While this alone may not carry the day at summary judgment, it is sufficient at this stage because secondary meaning itself is a face-intensive question ill-suited on a motion to dismiss. *See Vital Pharms., Inc. v. Gaspari Nutrition, Inc.*, No. 10-62033-CIV, 2011 WL 13217065, at *3 (S.D. Fla. June 6, 2011) (Jordan, J.) ("Moreover, though the *Conagra* factors are relevant when making an evidentiary determination of 'secondary meaning,' they are not essential elements of a § 1125(a) claim that must all be pled in detail. In fact, none of the factors are dispositive because the acquisition of "secondary meaning" is a question of fact, typically inappropriate even for summary judgment." (collecting cases)); *Niles Audio Corp. v. OEM Sys. Co., Inc.*, 174 F. Supp. 2d 1315,

---

[3]   True, Defendants admit that they did not use this website until "in or about 2020." [ECF No. 14 at 4 ¶¶ 48–49]. Still, viewing the facts in the light most favorable to Defendants, this may have predated Plaintiffs' use of NEWMARK in October 2020. Coupled with other sufficiently pled facts, these are sufficient for the first secondary meaning factor.

[4]   The Court also rejects Plaintiffs' argument that Defendants were required, but failed, to show that they have been using the NEWMARK mark in connection with their business continuously and substantially exclusively for five years. [*See* ECF No. 18 at 8 (discussing *Welding*, 509 F.3d at 1358)]. There is no "critical five-year mark," and the Eleventh Circuit has made that abundantly clear. *See FN Herstal SA v. Clyde Armory Inc.*, 838 F.3d 1071, 1084 (11th Cir. 2016).

1319 (S.D. Fla. 2001) (Graham, J.) ("Niles has properly alleged that the features of its OS Speakers have secondary meaning.  The Court cannot determine, at this time, whether Niles' OS Speakers do not have secondary meaning.  As stated above, the Court needs a full record to make such factual determinations."); *Kaplan, Inc. v. Yun*, 16 F. Supp. 3d 341, 348 (S.D.N.Y. 2014) (similar).  In any event, even assuming this allegation is too conclusory and insufficient for the second factor—as suggested by Plaintiffs [*see* ECF No. 18 at 7–8 (first citing *Tropic Ocean Airways, Inc. v. Floyd*, 598 F. App'x 608, 612 (11th Cir. 2014); then citing *Nationwide Van Lines, Inc. v. Transworld Movers Inc.*, 853 F. App'x 604, 607 (11th Cir. 2021))]—the four-factor secondary meaning test is nonexclusive.  *See, e.g.*, *Sanho Corp. v. Kaijet Tech. Int'l Ltd.*, No. 18-cv-05385, 2024 WL 3331657, at *2 (N.D. Ga. July 8, 2024) ("Other Eleventh Circuit cases have indicated that these factors are nonexclusive." (citing *Brooks Shoe Mfg. Co. v. Suave Shoe Corp.*, 716 F.2d 854, 860 (11th Cir. 1983) (considering "proof of intentional copying" as "probative evidence on the secondary meaning issue"))).

As to Defendants' efforts to associate the NEWMARK mark with their business, the allegations are sufficient at this stage.  Defendants have alleged that they "have represented buyers, tenants, and sellers in real estate transactions, and have worked with clients in on commercial real estate transactions for retail, shopping center, and medical office space."  [ECF No. 14 at 14 ¶ 14].  During and in connection with these representations, Defendants have used the NEWMARK mark in Florida as a legacy to Defendant Tavares's family name and family business.  [*See id.* ¶¶ 12–14].

Finally, Defendants have adequately alleged actual recognition by the public sufficient to move forward with their three claims.  They allege that "[b]rokers in the industry and consumers have been aware of Defendants' services and their use of NEWMARK since January 2016, including Plaintiff Newmark & Co."  [*Id.* ¶ 14].  Moreover, Defendants allege various communications and business transactions prior to October 2020 with representatives of Plaintiffs as early as January 19, 2016, when Defendants were using the NEWMARK mark in connection with their real estate business.  [*See id.* at

15 ¶¶ 18–22].   Viewing these allegations in the light most favorable to Defendants, reasonable inferences can be made that the public acknowledged Defendants' use of the trademark in relation to their enterprise.

As such, these three counterclaims contain sufficient allegations that plausibly establish secondary meaning.  Of course, at summary judgment, Plaintiffs may reassert this argument.

### 3. Likelihood of Consumer Confusion

Plaintiffs have failed to argue that Defendants' trademark claims do not plausibly plead a likelihood of consumer confusion.  As such, this argument is deemed waived and will not be considered.  *See Ala. Aircraft Indus., Inc. v. Boeing Co.*, No. 20-11141, 2022 WL 433457, at *8 n.13 (11th Cir. Feb. 14, 2022) ("[The defendant] did not raise this argument in its motion to dismiss and has forfeited the argument as a result." (citing *Reider v. Philip Morris USA, Inc.*, 793 F.3d 1254, 1258 (11th Cir. 2015))).

### C. Counterclaim IV – Abandonment of Newmark Registrations

Plaintiffs next argue that Defendants' abandonment claim for the '741 Mark and '012 Mark fails to state a plausible claim for relief.  Here, the Court agrees and will dismiss this count with prejudice.  Additionally, for the reasons stated below, the Court will not provide Defendants leave to amend.

A plaintiff must show the following two elements in order to allege an abandonment claim: (1) the defendant "ceased using the mark in dispute"; and (2) "has done so with an intent not to resume its use."  *Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.*, 304 F.3d 1167, 1174 (11th Cir. 2002) (citations omitted)).

Defendants have not come close to pleading either element sufficiently.  As Plaintiffs correctly point out, Defendants have not alleged any purported abandonment at the relevant time—that is, abandonment *after* the NEWMARK mark registration filing date.  *See* 15 U.S.C. § 1064(3) ("A petition

to cancel a registration of a mark . . . may . . .  be filed . . . [a]t any time if the registered mark . . . has been abandoned . . . .").  The relevant registration filing date for both the '741 Mark and '012 Mark is July 29, 2019.[5]  [ECF No. 14 at 19 ¶ 42].  Thus, Defendants were required to allege abandonment post-July 29, 2019; they have not done so.  Instead, Defendants alleged that Plaintiffs "did not use or continuously use the standalone mark NEWMARK for the registered services in United States commerce since 1929 . . . ."  [*Id.* at 25 ¶ 84].  That won't do it here.  *See Spliethoff Bevrachtingskantoor B.V. v. United Yacht Transp. LLC,* No. 21-61422-Civ, 2022 WL 17070554, at *5 (S.D. Fla. Nov. 17, 2022) (Scola, J.) ("Possible abandonment by the registrant during a time period *prior* to a challenged registration's filing date is irrelevant to the validity of that registration." (quoting 1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 17:3 (5th ed. 2022))).

Regardless, Defendants do not even allege that Plaintiffs ceased using the NEWMARK mark. Rather, their allegations cry abandonment due to Plaintiffs' corporate rebrand in 2020.  [*See* ECF No. 14 at 25–26 ¶¶ 84–85].  This "rebrand," however, simply concerns the word "Newmark" coupled with additional words or terms, such as "Knight Frank" or "Cornish & Carey" or "Pacific."  [*See, e.g., id.* at 17 ¶¶ 26–28].  The Eleventh Circuit has not squarely addressed whether the addition (or deletion) of a word or term constitutes abandonment.  But other courts that have addressed the issue say that this does not amount to abandonment.  *See, e.g., Sanofi-Aventis v. Advancis Pharm. Corp.,* 453 F. Supp. 2d 834, 846 (D. Del. 2006) ("[T]he addition of a word to a trademark does not constitute abandonment." (citing *Drexel Enters., Inc. v. Richardson,* 312 F.2d 525, 527 (10th Cir. 1962) ("[T]he combination of a trademark with another name does not of itself constitute abandonment."))).

---

[5]     The Court may take judicial notice of the federal trademark registrations from the registry of the United States Patent and Trademark Office without transforming the Motion into one for summary judgment. *Nationwide Van Lines,* 853 F. App'x at 606.

As for the "intent not to resume use" element, Defendants' allegations again fail. In fact, their *own* allegations doom their claim here. To wit, Defendants allege that Plaintiffs filed a name change with the New York Secretary of State in October 2020 to the name "Newmark." [ECF No. 14 at 20 ¶ 45]. If anything, that shows an intent to resume use of the mark at issue.

Perhaps acknowledging that their allegations are wholly insufficient, Defendants request leave to amend this counterclaim in their response "to replace this count with allegations seeking cancellation based on likelihood of confusion rather than abandonment." [ECF No. 29 at 8]. Yet, they provide no authority in support of the request. In any case, the Court declines this request.

The Eleventh Circuit has held that "[a] district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court." *Pop v. LuliFama.com LLC*, 145 F.4th 1285, 1297–98 (11th Cir. 2025) (quoting *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc)). Therefore, the Court "may dismiss a complaint with prejudice where the plaintiff fails to request leave to amend." *Id.* (quoting *Ounjian v. Globoforce, Inc.*, 89 F.4th 852, 862 (11th Cir. 2023)). Defendants, who are represented by competent counsel, never sought leave to amend in the event the counterclaims were dismissed. True, Defendants did request leave to amend in their response. [ECF No. 29 at 8, 18]. But "[w]here a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly." *Pop*, 145 F.4th at 1298 (quoting *Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1277 (11th Cir. 2018)) (affirming district court for dismissing complaint with prejudice where the plaintiff requested leave to amend "on the last page of his response in opposition to the defendants' motion to dismiss"). Accordingly, the Court dismisses Counterclaim IV (Abandonment of Newmark Registrations) [ECF No. 14 at 25–26 ¶¶ 82–87] with prejudice and without leave to amend.

15

### D. Counterclaim V – Abandonment of Newmark Realty Capital Marks

Finally, Plaintiffs move to dismiss Defendants' fifth counterclaim on the grounds that, *inter alia*, the Court lacks jurisdiction over it. The Court agrees.

Title 15, United States Code, Section 1119, provides that "[i]n any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action." 15 U.S.C. § 1119. "The Lanham Act gives federal courts the authority to cancel trademarks that the PTO has registered." *Royal Palm Properties, LLC v. Pink Palm Properties, LLC*, 950 F.3d 776, 782 (11th Cir. 2020) (citing 15 U.S.C. § 1119). "In order to successfully prosecute a claim for trademark cancellation, the challenger of a federally registered mark must demonstrate '(1) that it has standing to petition for cancellation because it is likely to be damaged, and (2) that there are valid grounds for discontinuing registration.'" *Id.* (alteration adopted) (quoting *Coach House Rest., Inc. v. Coach and Six Rests., Inc.*, 934 F.2d 1551, 1557 (11th Cir. 1991)). Section 1119 "only provides a remedy for some other violation of the trademark laws, not an independent cause of action." *Frumar Agri Foods (P) Ltd. v. RRK Foods, Inc.*, No. 25-cv-61105, 2025 WL 1825487, at *4 (S.D. Fla. July 2, 2025) (collecting cases).

Plaintiffs contend that the Court has no jurisdiction over Defendants' counterclaim to cancel Plaintiffs' trademarks under Registration Nos. 2,563,004 and 4,555,611 (collectively, the "Newmark Realty Capital Marks") because neither are at issue here. [*See* ECF No. 18 at 12]. Defendants disagree, arguing that the Newmark Realty Capital Marks are directly linked to Plaintiffs' claims in this action due to a few standalone allegations in the Complaint. [*See* ECF No. 29 at 10–11].

This is a close call, but Plaintiffs have the better of it. The core question presented is how sufficiently intertwined or strong the nexus is between the Newmark Realty Capital Marks and the '741 Mark and '012 Mark—the two trademarks that form the foundation of this litigation—to be

16

considered within an "action involving a registered mark," for purposes of Section 1119.  Defendants posit that the linkage is strong here because the allegations in the Complaint read, for instance, that "Newmark & Co. owns the Newmark Marks, and *all use of such marks by its licensees and related companies*, including Newmark Southern and other affiliated Newmark entities, accrues to the benefit of Newmark & Co.," and that "Newmark Marks" are defined as "common law trademark rights in the NEWMARK name throughout the United States, . . . *together with the Newmark Registered Marks*[.]"  [*Id.* at 11 (emphasis added) (citing ECF No. 1 ¶¶ 3, 22)].  In this Court's view, however, this connection is too attenuated to find that the Newmark Realty Capital Marks are sufficiently at issue.

In *Pinnacle Advertising & Marketing Group, Inc. v. Pinnacle Advertising & Marketing Group, LLC*, No. 18-CV-81606, 2019 WL 7376778 (S.D. Fla. Sept. 20, 2019), the Honorable Donald M. Middlebrooks discussed this issue cogently.  As His Honor explained, the term "[i]nvolving" as used in Section 1119 "*cannot mean the mere presence of a registered trademark*, but must be read as involving the right to use the mark and thus the right to maintain the registration."  *Id.* at *3 (emphasis added) (quoting *Windsurfing Int'l Inc. v. AMF Inc.*, 828 F.2d 755, 758 (Fed. Cir. 1987)).  "Before a claim for cancellation of mark is permitted, courts have required there to be an *ongoing dispute related to the mark which a party seeks to cancel*."  *Id.* (emphasis added) (citation omitted).  Applying this understanding, Judge Middlebrooks found that there was no independent jurisdiction to entertain the defendant's counterclaim because it sought "to cancel a mark different from the ones at issue in this case."  *Id.*

This Court finds *Pinnacle Advertising*'s reasoning highly persuasive, and it forecloses Defendants' cancellation counterclaim here.  At bottom, Defendants essentially seek cancellation of trademarks that are solely *present* somewhere in the ether of this litigation.  The cited allegations in the Complaint support "mere presence," and not sufficient overlapping involvement.  The Newmark Realty Capital Marks are not being challenged here, nor do they stand at the forefront of this case.  The thrust of this action concerns the '741 Mark and '012 Mark.  Therefore, based on the allegations

17

before this Court, the undersigned cannot discern an adequate overlap to allow for the exercise of jurisdiction over the cancellation claim of the Newmark Realty Capital Marks.

Accordingly, the Motion is GRANTED on this ground. This counterclaim is due to be dismissed for lack of jurisdiction but will be dismissed without prejudice and without leave to amend.

**E. Request to Strike**

Plaintiffs also ask this Court to strike the first, third, fourth, and sixth affirmative defenses from Defendants' Answer. [*See* ECF No. 18 at 17]. The Court grants this request in part.

Rule 12(f) of the Federal Rules of Civil Procedure explains when the court can strike "a pleading, an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The purpose of a motion to strike is to clean up the pleadings, remove irrelevant or otherwise confusing materials, and avoid unnecessary forays into immaterial matters." *Blake v. Batmasian*, 318 F.R.D. 698, 700 (S.D. Fla. 2017) (citations omitted). "Granting a motion to strike is a drastic remedy and is disfavored by the courts." *Id.* (citations omitted). As relevant here, "[s]triking defenses from a pleading" remains a "drastic remedy to be resorted to only when required for the purposes of justice and only when the stricken material has no possible relation to the controversy." *Guarantee Ins. Co. v. Brand Mgmt. Serv., Inc.*, No. 12-61670-CIV, 2013 WL 4496510, at *2 (S.D. Fla. Aug. 22, 2013) (internal quotation marks and citations omitted).

Plaintiffs' gripe with the first affirmative defense, "Abandonment," is that it is duplicative of Defendants' fourth counterclaim [ECF No. 14 at 25–26 ¶¶ 82–87]. The Court agrees, and because that counterclaim is dismissed with prejudice, this affirmative defense is hereby STRICKEN as duplicative and no longer bearing relation to this matter. *See Microsoft Corp. v. Jesse's Computers & Repair, Inc.*, 211 F.R.D. 681, 683 (M.D. Fla. 2002) ("A defense is insufficient as a matter of law . . . [where] it is clearly invalid as a matter of law.").

18

The third affirmative defense is "Unclean Hands," which Plaintiffs argue should be stricken because it fails to allege how the unreasonable delay injured Defendants and how Plaintiffs used the relevant trademarks to deceive consumers.  To sufficiently plead this affirmative defense, a defendant must satisfy two requirements: (1) "the plaintiff's wrongdoing is *directly related* to the claim against which it is asserted"; and (2) "the defendant must show that it was personally injured by the plaintiff's conduct."  *BPI Sports, LLC v. ThermoLife Int'l, LLC*, No. 19-CV-60505, 2021 WL 966011, at *5 (S.D. Fla. Mar. 5, 2021) (emphasis in original) (cleaned up), *report and recommendation adopted*, 2021 WL 965746 (S.D. Fla. Mar. 15, 2021).  And specific to trademark cases, the defendant must also "show that plaintiff used the trademark to deceive consumers."  *Id.* (citations omitted).

The Court once more agrees with Plaintiffs.  The lone pled allegation falls woefully short of what is required for this affirmative defense.[6]  [*See* ECF No. 14 at 11 ¶ 128].  Although Defendants argue things like "Defendants are clearly injured by the conduct where Plaintiffs now bring the instant lawsuit only after Defendants expended several years of energy and resources in their business[,]" none of these allegations appear in the Answer.  Defendants cannot remedy the insufficiency this way.  *Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 665 (11th Cir. 2015) ("We repeatedly have held that plaintiffs cannot amend their complaint through a response to a motion to dismiss." (citing *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009)).  However, given Defendants' response, the Court will give them an opportunity to amend their Answer to state a proper unclean hands defense by filing a motion for leave to amend consistent with the deadline set by the Court.

---

[6]      Although the undersigned has taken the view that *Twombly* and *Iqbal* do not apply to pleading affirmative defenses, a defendant must still "give the plaintiff 'fair notice' of the nature of the defense and the grounds upon which it rests."  *Colonial Van Lines, Inc. v. Safeway Moving, LLC*, No. 24-cv-80892, 2025 WL 458491, at *3 (S.D. Fla. Feb. 11, 2025) (citation omitted).  Defendants utterly failed to satisfy this lower pleading standard.

Next, the fourth affirmative defense: "Failure to Do Equity."  Defendants allege the same singular allegation for this affirmative defense as the unclean hands defense: "Plaintiffs were aware of Defendant's use of the NEWMARK mark since 2016 but unreasonably delayed taking any action against Defendant's use of the mark.  Plaintiffs did not take action with respect to Defendant's use until approximately 8 years after learning of Defendant's use." [ECF No. 14 at 11 ¶ 129].  Plaintiffs contend that this affirmative defense is duplicative of, and is the same as, the unclean hands defense. [ECF No. 18 at 18–19].  Indeed, this affirmative defense is redundant, *see Lancelot Am., LLC v. Chronus Constr. Inc.*, No. 2015-CA-10791-0, 2022 WL 19077242, at *2 (Fla. Cir. Ct. May 6, 2022) (treating unclean hands and "failure to do equity" interchangeably), and shall be STRICKEN.

At last, the final affirmative defense Plaintiffs seek to strike: "Acquiescence."  They aver that the Court should also strike this defense because Defendants failed to allege that Plaintiffs "affirmatively consented" to Defendants' use of the NEWMARK marks.  [ECF No. 18 at 19 (emphasis removed)].  The gravamen of this affirmative defense is that Plaintiffs were aware of Defendants' use of the NEWMARK since 2016, when the parties exchanged correspondence and communication, but Plaintiffs took no action or protested.  [*See* ECF No. 14 at 12 ¶ 132].  The acquiescence defense requires three elements: "(1) [t]hat petitioner actively represented that it would not assert a right or a claim; (2) that the delay between the active representation and assertion of the right or claim was not excusable; and (3) that the delay caused the registrant undue prejudice." *Coach House*, 934 F.2d at 1558.  Here, this affirmative defense "fails to adequately plead each of the requirements of acquiescence[,]" *Mailbu Media, LLC v. Zumbo*, No. 13-cv-729, 2014 WL 2742830, at *3 (M.D. Fla. June 17, 2014), so the Motion is due to be GRANTED in this respect.  But given the drastic remedy of striking affirmative defenses and the potential for Defendants to plead a valid defense, the Court will give Defendants one final opportunity to plead sufficient allegations under *Coach House* for their acquiescence defense.

## IV.  CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Plaintiffs' Motion to Dismiss Defendants' Counterclaims and Strike Affirmative Defenses [**ECF No. 18**] is **GRANTED IN PART AND DENIED IN PART**.

2.  Counterclaim IV (Abandonment of Newmark Registrations) [ECF No. 14 at 25–26 ¶¶ 82–87] is **DISMISSED** *with prejudice* and without leave to amend.

3. Counterclaim V (Abandonment of Newmark Realty Capital Marks) [ECF No. 14 at 26–27 ¶¶ 88–93] is **DISMISSED** *without prejudice* for lack of jurisdiction and without leave to amend.

4. Defendants shall file a motion for leave to amend to cure all deficiencies in their affirmative defenses consistent with this Order with a proposed Amended Answer attached to the motion **no later than April 27, 2026**.  Failure to do so will result in a dismissal of the insufficient affirmative defenses with prejudice and without leave to amend *without further notice*.

**DONE AND ORDERED** in the Southern District of Florida on April 13, 2026.

_____

DAVID S. LEIBOWITZ
UNITED STATES DISTRICT JUDGE

cc:      counsel of record

21